UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STOP HILLARY PAC<br>203 South Union Street, Suite 300<br>Alexandria, VA 22314<br><br>*Plaintiff*,<br><br>v.<br><br>FEDERAL ELECTION COMMISSION<br>999 E Street, NW<br>Washington, DC 20463,<br><br>*Defendant*. | Civil Case No. 1:14-cv-2080 |

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Stop Hillary PAC herby files this Complaint for Declaratory Relief pursuant to 52 U.S.C. § 30109(a)(8)(A) and (C)[1] to request this Court declare the Federal Election Commission's ("FEC") failure to act on Stop Hillary PAC's properly filed administrative complaint ("Administrative Complaint") as "contrary to law" and direct the FEC to conform with such declaration within 30 days, and states the following:

## JURISDICTION AND VENUE

1. This court has specific jurisdiction over this action pursuant to 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1331.

2. Venue is proper pursuant to 52 U.S.C. § 30109(a)(8)(A) and 28 U.S.C. § 1391(e).

---

[1] The relevant sections of the United States Code were recently re-codified, this petition uses new cites. The United States Code Editorial Reclassification Table for Title 52, Voting and Elections is available at http://uscode.house.gov/editorialreclassification/t52/Reclassifications_Title_52.html

## PARTIES

3. Stop Hillary PAC ("Stop Hillary") is a Hybrid Political Action Committee registered pursuant to the Federal Election Campaign Act of 1971, as amended (the "FECA"). 52 U.S.C. § 30203.

4. The FEC is the government agency with enforcement authority over the FECA as amended, 52 U.S.C. § 30101 et seq.

## STATEMENT OF FACTS

5. On January 22, 2014, Stop Hillary filed an Administrative Complaint with the FEC against Hillary Rodham Clinton, her authorized committee for President in 2008 "Hillary Clinton for President," her authorized committee for Senate "Friends of Hillary," (collectively "Hillary Clinton") and "Ready for Hillary PAC" alleging specific violations of 11 C.F.R. § 110.1; § 110.2; § 110.3; and § 110.11 related to Hillary Clinton's authorization of campaign activity by Ready for Hillary PAC; specifically the authorized use of Hillary Clinton's email list for the purpose of calling for the nomination and election of Hillary Rodham Clinton for President in 2016. Exhibit A, Stop Hillary Administrative Complaint to the FEC.

6. Upon information and belief, Ready for Hillary PAC used an email list that is the property of Hillary Clinton for President (the "List") to send an email with a "from" address and "reply to" address of info@hillaryclinton.com. Upon information and belief, the contents of the email states, "[n]ow is the time to get our support for Hillary organized and ready for 2016," and other words clearly calling for the nomination and election of Hillary Rodham Clinton. The URL and internet property of "HillaryClinton.com" are owned and paid for by Friends

of Hillary, an authorized committee of Hillary Rodham Clinton. Exhibit A, Stop Hillary Administrative Complaint to the FEC.

7. This email was sent or "deployed" by Hillary Clinton or a vendor employed by the authorized committee to do so. Such a deployment would, as is industry standard practice, require approval by the list owner, in this case Hillary Clinton, of the specific content being deployed.

8. Hillary Clinton's authorization of Ready for Hillary PAC's use of the List and approval of the content sent over the list is an explicit act of authorization pursuant to 11 C.F.R. § 102.13, making Hillary Rodham Clinton a candidate for Federal office and subject to applicable campaign finance restrictions. A candidate is considered an individual who seeks nomination for election to Federal office. 52 U.S.C. § 30101(2). An individual shall be deemed to seek nomination where such individual has given her consent to another to receive contributions or make expenditures on behalf of such individual, and if such person has received such contributions aggregating in excess of $5,000 or has made such expenditures aggregating in excess of $5,000. 52 U.S.C. § 30101(2)(b).

9. Hillary Clinton's authorization of the use of the List by Ready for Hillary PAC is openly and notoriously encouraging and supporting the activity of Ready for Hillary PAC which seeks the nomination and election of Hillary Rodham Clinton as President in 2016. In doing so, Hillary Clinton has authorized Ready for Hillary PAC to perform the campaign activity on Hillary Rodham Clinton's behalf. However, Hillary Rodham Clinton has not registered as a candidate as required by the FECA, nor has she followed FEC procedures to disavow any unauthorized campaign efforts on her behalf pursuant to 11 C.F.R. § 100.3(a)(2).

10. Ready for Hillary PAC alleges that it is a non-connected political action committee.[2] Ready for Hillary PAC has not registered as an authorized committee of a candidate[3] as required by 2 U.S.C. § 30102 (e)(1). As an authorized committee of a candidate, Ready for Hillary PAC's receipt of funds in vastly excessive amounts and from wholly impermissible sources violates 11 C.F.R. § 110.1, § 110.2 and § 110.3.  As an authorized committee, it has failed to use the required disclaimers for its solicitations and other communications. 11 C.F.R. § 110.11(b)(1). Ready for Hillary PAC, by failing to register as an authorized committee as required by the 11 C.F.R. § 102.1(b), is attempting to evade the more burdensome contribution limits and disclaimer requirements applicable to it pursuant to 11 C.F.R. § 110.1(b).

11. Ready for Hillary PAC's solicitation of contributions in excess of $5,000 per calendar year and acceptance of contributions in excess of $2,600 per election violates 11 C.F.R § 110.1; § 110.2; and § 110.3. For example, Ready for Hillary PAC received a contribution from Arts PAC in the amount of $25,000. Exhibit B, Ready for Hillary FEC Form 3x, Image #13941302166.

12. On January 22, 2014, Stop Hillary filed the Administrative Complaint to the FEC outlining the various FECA violations by Hillary Clinton and Ready for Hillary PAC.

---

[2] Ready for Hillary PAC was originally an Independent Expenditure only PAC, or "Super PAC," and changed its registration to be a "Hybrid PAC" on May 28, 2014. An Independent Expenditure only PAC can accept donations in unlimited amounts but cannot directly contribute to candidates. *SpeechNow.org v. FEC*, 599 F.3d 686 (U.S. App. D.C. 2010). A Hybrid PAC is an entity that raises and expends unlimited funds to make independent expenditures in one bank account while raising and spending amount- and source-restricted funds in a separate bank account to contribute directly to federal candidates. *Carey v. FEC*, 791 F. Supp. 2d 121(D.D.C. 2011)

[3] Ready for Hillary PAC's FEC Form 1, Statement of Organization indicates it is registered as a non-connected committee and thus not as an authorized committee of a candidate, and is available at http://docquery.fec.gov/pdf/568/13031020568/13031020568.pdf#navpanes=0

13. On January 29, 2014, the FEC acknowledged receipt of the Administrative Complaint and indicated that the Respondents of the Administrative Complaint would be notified no later than February 3, 2014. Exhibit C.

14. Respondents to FEC complaints generally have 15 days to respond; in this case, a response would have been required by February 18, 2014 assuming no extensions were granted.  11 C.F.R. § 111.6. Even had an extension to respond been granted, 120 days from January 29, 2014 would be July 16, 2014.  It has now been 316 days since the FEC received Stop Hillary's Administrative Complaint, and the FEC has failed to act upon the Administrative Complaint.

**FEC's Failure To Act On Stop Hillary's Administrative Complaint Is "Contrary To Law"**

15. The FEC's failure to act on Stop Hillary's properly filed Administrative Complaint within 120 days is "contrary to law" pursuant to 52 U.S.C. § 30109 (a)(8)(C). "Any party aggrieved …by a failure of the Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed, may file a petition with the United States District Court for the District of Columbia." 52 U.S.C. § 30109 (a)(8)(A). Upon such petition, the Court may declare the FEC's failure to act is contrary to law, and direct the Commission to conform to such declaration within 30 days. 52 U.S.C. § 30109 (a)(8)(C).

16. The continuing failure of the FEC to act on Stop Hillary's Administrative Complaint during the 120-day period beginning on the date the Administrative Complaint is filed has aggrieved Stop Hillary and is contrary to law. Pursuant to 52 U.S.C. § 30109(a)(8)(C), Stop Hillary asks the Court to enter an order directing the FEC to conform to the Court's declaration and act upon the Administrative Complaint within 30 days. If the FEC does not resolve the

Administrative Complaint within 30 days, Stop Hillary asks the Court to authorize Stop Hillary to bring a civil action against the FEC to remedy the FECA campaign finance violations. 52 U.S.C. § 30109.

### A. Stop Hillary Has Standing To Bring This Claim

17. Stop Hillary may establish standing to bring this Complaint for Declaratory Relief by showing that (1) it has suffered an injury in fact, (2) there is a causal connection between the injury and the conduct being complained about and (3) it is likely that the injury will be redressed by a favorable decision. *Judicial Watch, Inc. v. Fed. Election Comm'n*, 293 F. Supp. 2d 41 (D.D.C. 2003); *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that a party invoking federal jurisdiction bears the burden of establishing it has suffered injury in fact). Stop Hillary has suffered injury as a result of the FEC's failure to act on Stop Hillary's Administrative Complaint, and Stop Hillary's injuries are easily redressable.

   1. Stop Hillary has suffered an Injury In Fact

18. The FEC's unreasonable delay in investigating Hillary Clinton and Ready for Hillary PAC, which is facially contrary to statute, has caused Stop Hillary political competitor injury, informational injury, and association injury based on the competitive and informational injuries of its supporters. A plaintiff has suffered an injury in fact if it can show that it has suffered *any* of three harms: political competitor injury, informational injury, or association injury. *Democratic Senatorial Campaign Comm., Inc. v. Fed. Election Comm'n*, Nos. 96-2184 & 95-0349, 1999 U.S. Dist. LEXIS 23375 at *7 (D.D.C. Oct. 18, 1999), and here Stop

Hillary has suffered all three because of the FEC's refusal to adhere to the plain language of the statute.

   *i. Stop Hillary Suffers From Political Competitor Injury*

19. A party may show political competitor injury when "he personally competes in the same arena with the same party to whom the government has bestowed the assertedly illegal benefit." *Democratic Senatorial Campaign Comm., Inc.*, 1999 U.S. Dist. LEXIS 23375 at *18; *See also Fulani v. Brady*, 935 F.2d 1324, 1327 (D.C. Cir. 1991) (holding competitor standing exists "where a defendant's actions benefitted a plaintiff's competitors, and thereby caused the plaintiff's subsequent disadvantage"). Stop Hillary, Hillary Clinton, and Ready for Hillary PAC compete in the same political arena – the substantial public debate as to whether Hillary Rodham Clinton should be nominated and elected president of the United States, and have diametrically opposite and mutually exclusive views as to this question. *See* Maggie Haberman, *Hillary Clinton's Shadow Campaign*, (Jan. 5, 2014, 9:01 PM), http://www.politico.com/story/2014/01/hillary-clinton-2016-shadow-campaign-101762.html. Ready for Hillary PAC is a direct political competitor to Stop Hillary because Ready for Hillary PAC's purpose is to promote Hillary Rodham Clinton's nomination and election as President in 2016.  Stop Hillary's purpose is to prevent Hillary Rodham Clinton from being nominated or elected President in 2016.

20.  The FEC's actions have disadvantaged Stop Hillary in this political arena. The absence of a ruling by the FEC bestows an illegal benefit on Hillary Clinton and Ready for Hillary PAC by failing to sanction Hillary Clinton or Ready for Hillary PAC where Hillary Clinton has illegally authorized Ready for Hillary PAC, an independent committee, to raise money on

Hillary Rodham Clinton's behalf from improper funding sources and outside of the rules that govern authorized committees. The FEC's failure to take action gives Hillary Clinton a clear illegal benefit that causes disadvantage to Stop Hillary. The FEC's inaction obstructs Stop Hillary's mission and hinders its efforts to prevent Hillary Rodham Clinton's nomination and election as President. As a result, Stop Hillary suffers political competitor injury.

        ii.    *Stop Hillary Suffers From Informational Injury*

21. Informational injury occurs when a plaintiff can demonstrate that it would "put that information to use had plaintiff not been unlawfully deprived of that information by the FEC." *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 20-21 (1988); S*ee also Common Cause v. Fed. Election Comm'n,* 108 F.3d 413, 418 (D.C. Cir. 1997)*.* The FECA's extensive reporting requirements provide and entitle voters and other participants in the political process to truthful information regarding the financing of federal elections. 2 U.S.C. § 43; *Common Cause,* 108 F.3d at 418; *Atkins*, 524 U.S. at 21. Stop Hillary suffers from informational injury resulting from the FEC's actions because the FEC's failure to investigate Hillary Clinton and Ready for Hillary PAC's campaign violations has deprived Stop Hillary of information Stop Hillary would put to use, such as knowing whether Hillary Rodham Clinton is a candidate for office.

22. Stop Hillary suffers from informational injury in several ways. First, Stop Hillary can make public use of information as to whether Hillary Clinton and Ready for Hillary PAC violated the FECA had Stop Hillary not been unlawfully deprived of that information by the FEC. Secondly, if Hillary Clinton and Ready for Hillary PAC have in fact violated the FECA, the

resulting amendments to their filed FEC reports would correct the public record and allow Stop Hillary to make use of the true information.

23. Stop Hillary relies on timely and accurate information from the FEC for the purpose of informing voters on campaign and political matters and making spending and political decisions. The FEC's inaction precludes Stop Hillary from obtaining a definite ruling on whether Hillary Clinton's actions are violations of the FECA. Stop Hillary is prevented from notifying voters of this information in order for voters to accurately evaluate Hillary Rodham Clinton's candidacy for Federal office.

24. Stop Hillary's principal purpose is to prevent Hillary Rodham Clinton's candidacy for Presidential office, therefore, Stop Hillary would use any ruling by the FEC to modify its strategy in preventing Hillary Rodham Clinton's candidacy. If the FEC concludes Hillary Clinton violated the FECA, Stop Hillary can use this information as support for its campaign against Hillary Rodham Clinton. Conversely, if the FEC determines Hillary Clinton's actions are permissible, Stop Hillary can utilize this information to employ other strategies to oppose Hillary Rodham Clinton's nomination and election to Federal office and, separately, Ready for Hillary PAC's support of the effort.

*iii. Stop Hillary Suffers from Associational Injury*

25. Stop Hillary suffers from association injury as a result of the FEC's failure to conduct an investigation into the Administrative Complaint. An association has standing to sue on behalf of members when: (a) members would otherwise have standing; (b) interests at stake are germane to organization's purpose; and (c) neither claim nor relief requested requires

participation of individual members. *Democratic Senatorial Campaign Comm., Inc.*, 1999 U.S. Dist. LEXIS 23375 at *18.

26. Stop Hillary's members would otherwise have standing as voters seeking information from the FEC to help the voters evaluate candidates for Federal office. If the informational injury is related to voting, the injury is sufficiently concrete and specific because voting is the most basic of political rights. *Fed. Election Comm'n v. Akins*, 1998 U.S. Dist. LEXIS 3567 at *25. When "FEC action or inaction deprives voters of information that would help them evaluate candidates for office, such voters have standing to complain." *Vroom v. Fed. Election Comm'n*, 951 F. Supp. 2d 175, 176 (D.D.C. 2013). The FEC's failure to investigate Stop Hillary's Administrative Complaint denies its members as voters the information necessary to evaluate Hillary Rodham Clinton's candidacy for office. It is important that voters know whether Hillary Clinton violated campaign finance laws through authorizing Ready for Hillary PAC to use the List and obtain contributions, which exceed campaign limits and are funded by improper sources, on Hillary Rodham Clinton's behalf.

27. The interests at stake are relevant to Stop Hillary's purpose because Stop Hillary's primary objective is to prevent Hillary Rodham Clinton's nomination to and election as President of the United States, whereas Ready for Hillary PAC's purpose is to support Hillary Rodham Clinton's nomination to and election as President. The FEC's failure to respond significantly interferes with Stop Hillary's goal to prevent Hillary Rodham Clinton's candidacy.

28. Neither claim nor the relief requested requires participation of individual members of Stop Hillary. This third element of association injury is typically satisfied when the plaintiff association seeks injunctive or declaratory relief generally benefiting the association and its

members. *E.g.*, *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988); *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274 (1986). Because Stop Hillary seeks declaratory and injunctive relief with respect to the FEC's failure to act on Stop Hillary's Administrative Complaint, which generally benefits Stop Hillary and its members, the participation of individual members of Stop Hillary is not required.

29. Thus, Stop Hillary suffers from association injury because its members would otherwise have standing, the interests at stake are germane to the organization's purpose, and neither the claim nor relief requested requires participation of individual members.

   2. There is a Causal Connection Between The FEC's Inaction and Stop Hillary's Injuries

30. Stop Hillary can establish a causal connection between the FEC's failure to address Stop Hillary's Administrative Complaint and Stop Hillary's injuries. In order to establish a causal connection, the injury in fact must be fairly traceable to the challenged act. *Democratic Senatorial Campaign Comm., Inc.*, 1999 U.S. Dist. LEXIS 23375 at *6. "Fair traceability turns on the causal nexus between the agency action and the asserted injury." *Freedom Republicans v. Fed. Election Comm'n*, 13 F.3d 412, 418 (D.C. Cir. 1994).

31. Stop Hillary suffers from political competition injury, informational injury and association injury as a direct result of the FEC's failure to respond to Stop Hillary's Administrative Complaint. 52 U.S.C. § 30109(a)(8)(A) specifically allows parties to file FEC complaints, and the FEC is required to act on those complaints in a timely fashion. *See* 7 U.S.C. § 2247(b) (requiring agencies to act within a reasonable time); 52 U.S.C. § 30107(a)(9) (giving the FEC the power "to conduct investigations and hearings *expeditiously*"), emphasis added;

and 52 U.S.C. § 30109(a)(8)(C) (allowing a party to file a complaint where the FEC has not acted within 120 days).

The FEC has failed to act on Stop Hillary's Administrative Complaint. The FEC's failure to adhere to 52 U.S.C. § 30109(a)(8)(A) is the exact cause of the injuries alleged by Stop Hillary and is on its face contrary to law. 52 U.S.C. § 30109(a)(8)(C).

      3.   A Ruling Will Redress Stop Hillary's Injuries

32. A ruling from the FEC will redress Stop Hillary's injuries. To determine redressability, a plaintiff must prove that it is likely, as opposed to merely speculative, that the injury will be redressed by a ruling in its favor. *Democratic Senatorial Campaign Comm., Inc.*, 1999 Dist. LEXIS 23375 at *16. Redressability "centers on the causal connection between the asserted injury and judicial relief." *Id.* at 421.

33. Stop Hillary's injury will be redressed by this Court's ruling in its favor because such a ruling would require the FEC to comply with the plain language of the statute and take definitive action on the Administrative Complaint. And, Stop Hillary's injury is redressed regardless of what specific action the FEC takes.

34. Hillary Clinton and Ready for Hillary PAC's various violations of the FECA can be remedied by the FEC if the FEC concurs in whole or in part with the Administrative Complaint and proceeds with the enforcement process to compel Hillary Clinton and Ready for Hillary PAC to finally comply with the law, including for example truthfully amending prior FEC reports and ending the unlawful benefit of continued enjoyment of unlawfully raised, excessive, and inherently corrupting contributions. *McCutcheon v. Fed. Election Comm'n*, 134 S. Ct. 1434,

1453 (2014) (holding that contributions in excess of the contribution limits are corrupting and that aggregate contribution limits are unconstitutional).

35. If the FEC dismisses the Administrative Complaint or finds no violation, Stop Hillary may then exercise its subsequent statutory remedies.

**B. The FEC's Failure To Act Is Contrary To Law**

36. Under 52 U.S.C. § 30109(a)(8)(A), "[a]ny party aggrieved... by a failure of the Commission to act on such complaint during the 120-day period …. may file a petition with the United States District Court for the District of Columbia." 52 U.S.C. § 30109(a)(8)(A). In addition, 52 U.S.C. § 30109(a)(8)(C) states that a "court may declare that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C).

37. Agencies must take action within a reasonable time. 7 U.S.C. § 2247(b). In empowering the FEC to conduct investigations, Congress specifically gave the FEC the power "to conduct investigations and hearings *expeditiously*." 52 U.S.C. § 30107(a)(9). Congress's inclusion of short deadlines within the FECA are evidence of Congress's expectation that the FEC "would exercise with good speed its power to investigate and conduct hearings expeditiously" and act, "if reasonably possible, before the next election." *Rose v. Fed. Election Comm'n*, 608 F. Supp. 1, 14 (D.D.C. 1984) (holding the statue necessarily implies the FEC should not have allowed the plaintiff's 1982 charges to go unresolved until 1984).

38. The Court should order the FEC to now act expeditiously in this matter and not allow the FEC to further delay acting on the Administrative Complaint which was filed with the FEC in January 2014 and is critical to the 2016 election. The Court must determine whether the

FEC has acted "expeditiously" where the issue before the Court is whether the FEC's failure to act is contrary to law. *Common Cause v. Fed. Election Comm'n*, 489 F. Supp. 738, 744 (D.D.C. 1980). A strong presumption exists that the FEC will resolve every complaint before it within the two-year period until the next following election. *Rose*, 608 F. Supp. at 17; *See also Common Cause,* 489 F. Supp. at 744 (holding the court would have undoubtedly have found the FEC's failure to act contrary to law had the 1978 complaint not resulted in conciliation agreements in 1980); *National Right to Work v. Thompson*, Fed. Elec. Camp. Fin. Guide para. 9042 (CCH) (D.D.C. 1977) (stating "the biannual occurrence of elections" makes an "expeditious resolutions" of FEC complaints critical).

39. 52 U.S.C. § 30109(a)(8)(A) plainly allows a complainant "to file suit in federal district court to seek to enforce the statute's insistence on expedition." *Id.* The FEC's failure to process administrative complaints in a meaningful time frame substantially undermines the deterrent value of the FECA's enforcement provisions. *Democratic Senatorial Campaign Comm., Inc.*, 1999 Dist. LEXIS 23375 at *17.

40. The legal standards that a court must apply in reviewing the FEC's failure to act are established in the 1980 case *Common Cause. Rose*, 608 F. Supp. at 12; *See also Alliance for Democracy v. Fed. Election Comm'n*, 335 F. Supp. 2d 39, 43 (D.D.C. 2004) (applying the *Common Cause* and *Telecommunications Research and Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) factors in determining whether the case was moot).

41. The FEC's failure to act is considered contrary to law if its failure to take action is arbitrary and capricious. *Common Cause v. Fed. Election Comm'n*, 489 F. Supp. 738, 744 (D.D.C. 1980); *See also In re Fed. Election Campaign Act Litig.*, 474 F. Supp. 1044, 1047 (D.D.C. 1979) (holding "[i]t would be futile to compel an investigation" where the FEC finds an

investigation is not warranted and such finding is supported by ample evidence). "Factors the Court may consider in making its determination include the credibility of the allegation, the nature of the threat posed, the resources available to the agency, and the information available to it, as well as the novelty of the issues involved." *Id.*

42. Stop Hillary's allegation is credible because it involves multiple violations of the FEC by Hillary Clinton, Ready for Hillary PAC and Hillary Rodham Clinton. The nature of the threat posed involves excessive receipt of contributions in violation of campaign finance limits and failure to use proper disclaimers on communications which results in improper influence in elections. There is no indication of any lack of information or resources currently impacting the FEC that would cause the FEC's delay in acting on Stop Hillary's Administrative Complaint. Furthermore, the FEC violations stated in Stop Hillary's Administrative Complaint are not novel or legally complex, and their merit easily ascertained by production of emails between Respondents of the Administrative Complaint.

43. The FEC failed to act on Stop Hillary's Administrative Complaint within 120 days; therefore, the Court should declare the FEC's failure to act is "contrary to law."

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. A declaration that the FEC's failure to act is "contrary to law" pursuant to 52 U.S.C. § 30109(a)(8)(A);

2. An order to the FEC to conform with the Court's declaration and act upon Stop Hillary PAC's administrative complaint within 30 days and authorizing Stop Hillary to bring a civil

action if the FEC does not act upon the administrative complaint within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

3. Costs and attorneys' fees in this action, pursuant to any applicable statute or authority, including but not limited to 5 U.S.C. § 552(a)(4)(E); and

4. Such other relief the Court deems just and proper.

Date this 11th day of December, 2014.

                                              Respectfully submitted

                                              /s/
                                        Dan Backer (D.C. Bar No. 996641)
                                        Christina Sirois (D.C. Bar No. 1016945)
                                            *Admission Pending*
                                        DB CAPITOL STRATEGIES, PLLC
                                        203 South Union Street, Suite 300
                                        Alexandria, VA 22314
                                        (202) 210-5431 phone
                                        (202) 478-0750 fax
                                        dbacker@dbcapitolstrategies.com

                                        *Attorneys for Plaintiff*